9151

McDANIEL v. CHARLESTON AND WESTERN CAROLINA RY.

(85 S. E. 957.)

RAILROADS—DOGS ON TRACK—NONSUIT.—Where a dog is run over and killed by a railroad train, and there is no evidence that the dog was incapable of taking care of himself, or other circumstances showing negligence on the part of those operating the train, a nonsuit should have been granted in action for damages arising from its death.

Before MEMMINGER, J., Edgefield, March, 1915. Reversed.

Action by G. C. McDaniel against Charleston & Western Carolina Railway Co. From a judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Messrs. F. B. Grier* and *Sheppard Bros.,* for appellant, cite: 10 Rich. L. 54; 55 S. C. 334; 73 S. C. 306; 78 S. C. 527. *No evidence of negligence:* 45 S. C. 278; 69 S. C. 529; 72 S. C. 564; 19 S. C. 32, 38. *Remarks in refusing nonsuit were prejudicial:* 73 S. C. 383; 80 S. C. 383; 81 S. C. 378, 379; 83 S. E. 83; 87 S. C. 410. *Error of law to*

*refuse new trial where there was no evidence to sustain verdict:* 54 S. C. 128; 65 S. C. 517; 66 S. C. 61; 70 S. C. 533.

*Messrs. P. B. Mayson* and *S. M. Smith,* for respondent, cite: *As to liability:* 86 S. C. 114; 35 S. E. 492; 73 S. C. 308. *Remarks in refusing nonsuit:* 81 S. C. 379; 61 S. C. 17; 71 S. C. 142; 72 S. C. 352; 73 S. C. 383; 80 S. C. 383. *Refusal of new trial:* 33 S. E. 468.

July 29, 1915.

The opinion of the Court was delivered by Mr. Justice Fraser.

This is an action for the negligent killing of a dog. There are six exceptions, but if the first exception is sustained, the others need not be considered.

The first exception complains of error in the Circuit Judge in refusing a motion for a nonsuit on the ground that there was no evidence of negligence on the part of the defendant. This exception must be sustained.

The only witness relied upon to prove negligence was Charley Bussey. He testified as follows:

"Charley Bussey, sworn. Direct examination by Mr. Mayson. Q. Where do you live? A. At Modoc. Q. How old are you? A. Fourteen. Q. How long have you known the railroad track that passes through Modoc. A. Ever since I have been born. Q. Where were you the evening that the dog was killed? A. I was coming home around a curve and the train was coming down the road and the dog was up the road there and the train was not quite in sight and they could have seen around the curve if they had been on this side; when I got middleways of the curve the dog was not far from the train; I got off the railroad and let the train pass by me, but the view of the dog was cut off; the train passed by me and I went on up the road and found the dog dead. Q. You saw the dog coming down the railroad? A.

Yes, sir. Q. What condition was that dog in? A. He looked like he was tired, and had his head and tail down like he was worried. Q. Did the train blow? A. I did not hear it. Q. If it had blown you could have heard it? A. Yes, sir. Q. Did the bell ring? A. No, sir; I do not think it did. Q. This dog was killed on a straight line track? Q. How far was that straight line on which he was killed from the little curve? A. I guess it is a quarter of a mile. Q. The dog was below the curve? A. It was right straight up the railroad. Q. I understand you to say the dog was killed on a straight line of railroad? A. Yes, sir. Q. If the engineer had been looking he could have seen him? A. Yes, sir. Cross-examination by Mr. Sheppard: Q. How long after you saw the dog on the track before the train came along? A. Ten or fifteen or twenty minutes. Q. And he got some distance from the train in that time, or some distance down the track in that time? A. Yes, sir. Q. You did not see the train hit him? A. No, sir. Q. You could not see whether the dog ran across the track or not? A. No, sir. Q. You do not know exactly where he was when the train hit him? A. No, sir. Q. There is a curve there and you were on the side of the curve and the train was coming on the other side of the curve up the railroad? A. Yes, sir. Q. And you do not know how far the train was from the curve when you last saw the dog? A. No, sir. Q. This is your signatrue to that statement (presenting same)? A. Yes, sir. Q. It gives me pleasure to say that you can write your name better than I can mine."

This case is determined by *Fowles* v. *Railway*, 73 S. C. 308, 63 S. E. 534.

"The dog's intelligence, the rapidity and agility with which he moves, warrant those in charge of a train in acting upon the supposition that he will observe its approach and get out of the way. In this respect it is reasonable to place him on somewhat the same footing as a human being when in the possession of all his faculties and capable

of seeing the danger and escaping from it. If the dog had been observed by the engineman to be on the track in a condition of helplessness or even impaired capacity to take care of itself, it would have been the duty of the engineman to take some precaution for its safety; but there is no proof that the dog was not in possession of his faculties, or that the engineman had any opportunity to see him on the track before he was killed."

The witness had not seen the dog on the track within from ten to twenty minutes before the train passed. He said the dog looked tired and worried, but did not intimate that the condition of the dog was one of helplessness or an incapacity to take care of himself.

There is no showing that the train could have stopped, even if the dog remained on the track. He said "when I got middleways of the curve, the dog was not far from the train." When asked, "Did the bell ring?" said, "I do not think it did."

The record does not show any negligence for which the defendant is responsible, under the law of this State, and the nonsuit should have been granted.

The judgment is reversed.